UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                       :

KARIM GOLDING,                                 :

                              Plaintiff,    :
                                                   :              20-CV-8679 (VSB)
               -against-          :
                                                 :             **OPINION & ORDER**
DHS/ICE, et al.,                      :

                                  Defendants.  :

------------------------------------------------------------X

Appearances:

Karim Golding
Valley Stream, New York
*Pro se Plaintiff*

Jessica F. Rosenbaum
U.S. Attorney's Office, SDNY
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Pro se Plaintiff Karim Golding ("Plaintiff") brings a claim pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against the only Defendant remaining in this action, Max Gorelik ("Gorelik" or "Defendant"), a deportation officer with United States Immigration and Customs Enforcement ("ICE"), on the grounds that Gorelik maliciously prosecuted Plaintiff by wrongfully identifying him as an arriving alien on a document commencing an immigration action. Before me is Gorelik's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the jurisdictional provisions of the

1

Immigration and Nationality Act, 8 U.S.C. § 1252, prevent me from exercising jurisdiction in this matter, Plaintiff's case is DISMISSED.[1]

I. **Relevant Factual Background**[2]

Plaintiff is a Jamaican citizen who arrived in the United States "via the JFK Airport . . . in 1994." (First Amended Petition for a Writ of Habeas Corpus ¶ 26, *Golding v. Sessions*, No. 18-cv-17175 ("*Golding II*") (D.N.J. July 12, 2019), Doc. 37-9.) Plaintiff is sometimes identified in databases to be a United States citizen, while other databases reflect his Jamaican citizenship. (*See* Am. Compl. ¶ 7; *see, e.g.*, *id.* at 28 (DHS Form I-213 page dated April 10, 2015 stating that Plaintiff "is a citizen and native of Jamaica.").)[3]

On August 3, 2007, Plaintiff was indicted in the United States District Court for the Eastern District of New York for various drug and firearms charges. (Indictment, *United States v. Golding*, No. 07-cr-621 ("*Golding I*") (E.D.N.Y. Aug. 3, 2007), Doc. 24.) Following proceedings and appeals spanning from 2007 through 2016, *see generally Golding I*, on October 26, 2016, Plaintiff was resentenced to time served. (Am. Compl. at 92 ¶ 3).[4]

---

[1] Although Plaintiff's *Bivens* claim is dubious under existing law, I cannot reach the motion to dismiss for failure to state a claim since I do not have jurisdiction. However, I discuss the deficiencies I observe in Plaintiff's *Bivens* claim.

[2] The following relevant facts are taken from Plaintiffs' Amended Complaint, (Doc. 13.), which I assume to be true for purposes of this motion, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), as well as from certain documents properly before me for the purposes of a Rule 12(b)(6) motion, *see United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," as well as any "document 'integral' to the complaint." (citations omitted)). Additional facts come from publicly filed documents of which I may properly take judicial notice. *Global Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). My references to these facts should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Am. Compl." refers to the Amended Complaint. (Doc. 13.) Plaintiff attaches various documents to the Amended Complaint as exhibits, but they generally lack a consistent pagination scheme. Accordingly, references to "Am. Compl. at __" refer to the page of the Amended Complaint corresponding to the page number stated in the blue ECF file stamp.

[4] *See also Golding I*, (E.D.N.Y. Oct. 26, 2016) Doc. 271 (Minute entry for resentencing proceeding).

On October 27, 2016, Plaintiff was transferred from the Metropolitan Detention Center in Brooklyn to ICE custody and brought to ICE's office on Varick Street in New York City. (*Id.* ¶ 20.) Gorelik generated the paperwork given to Plaintiff to begin removal proceedings, including a Notice to Appear ("NTA"). (*Id.* ¶¶ 22.) The NTA lists Plaintiff as a Jamaican citizen. (*Id.* at 85). Plaintiff asserts that Gorelik "served [Plaintiff] with an NTA wrongfully stating that he is an arriving alien." (*Id.* ¶ 22; *see also id.* at 85 (NTA checking the box that Plaintiff is "an arriving alien" and then stating the basis of removal to be that Plaintiff is "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.").) "This intentional misclassification caused [Plaintiff] harm because it subjected him to mandatory detention." (*Id.*) Plaintiff asserts that Gorelik provided him with the allegedly erroneous NTA despite an "ICE database[]" that "declared [Plaintiff] to be a United States citizen." (*Id.* ¶ 14.)[5]

While his removal proceedings were pending, Plaintiff was "subjected . . . to mandatory detention" due to his criminal history. (*Id.* ¶ 15.) Eventually, on April 5, 2018, Plaintiff filed for a writ of habeas corpus in this Court. (Petition, *Golding v. Sessions*, No. 18-cv-3036 (S.D.N.Y. Apr. 5, 2018), Doc. 1.) The habeas proceeding was transferred to the District of New Jersey on December 13, 2018. (Certified Copy of Transfer Order, *Golding II*, (D.N.J. Dec. 6, 2018), Doc. 20.) On December 9, 2019, United States District Court Judge Esther Salas of the District of New Jersey granted Plaintiff's amended habeas corpus petition and ordered that Plaintiff be

---

[5] According to a "rap sheet" seemingly retrieved by "Gorelik" from the National Law Enforcement Telecommunications System on March 30, 2015, Plaintiff is a United States citizen who was born in the United States. (Am. Compl. 75–76.) The rap sheet also states that Plaintiff is 6'00" tall and weighs 190 pounds. (*Id.* at 75.) By contrast, a record from the New York State Division of Criminal Justice Services also retrieved on "3/30/2015" states that Plaintiff's place of birth is "Unknown" and that Plaintiff is 5'09" tall and weighs 140 pounds. (*Id.* at 80.)

3

given an individualized bond hearing.  (*See* Order, *Golding II*, Doc. 44.)  An immigration judge subsequently held the individualized bond hearing and denied Plaintiff bond.  (*See* Motion to Enforce ¶¶ 4–15, *Golding II* (D.N.J. Jan. 15, 2020) Doc. 48-1.)

## II.     Procedural History

Plaintiff's claims in this action were initially part of a complaint joined by other plaintiffs and filed in the United States District Court for the Northern District of Alabama.  (Complaint for Violations of Civil Rights *Dangler v. DHS/ICE*, 19-cv-789-CLM-JHE (N.D. Ala. May 20, 2019), Doc. 1.)  That complaint raised, among other things, poor conditions in ICE's Etowah County, Alabama detention facility.  (*See id.*)  Plaintiff's claims were severed from that complaint, which led to Plaintiff's filing his original complaint in this action, still in the Northern District of Alabama, on July 22, 2019.  (*See* Docs. 1–2.)  On August 16, 2019, United States Magistrate Judge John H. England, III of the Northern District of Alabama entered an Order directing Plaintiff to file an amended complaint.  (Doc. 10.)  On November 19, 2019, Plaintiff filed the operative Amended Complaint. (Doc. 13.)

On June 1, 2020, Judge England entered a Report and Recommendation recommending dismissal of all of Plaintiff's claims in the Amended Complaint except for the *Bivens* claim against Gorelik.  (Doc. 15.)  Judge England recommended that the *Bivens* claim be severed and transferred to the Eastern District of New York on the grounds that the claim pre-dated Plaintiff's detention and thus was not properly joined with the rest of Plaintiff's case, which challenged the conditions of detention.  (*Id.* at 9, 11.)  One June 25, 2020, United States District Court Judge R. David Proctor adopted the Report and Recommendation and transferred this action to the Eastern District of New York.  (Doc. 17.)  On October 16, 2020, this action was transferred to this Court.  (Doc. 24.)

4

On January 20, 2021, a summons was issued as to Gorelik.  (Doc. 33.)  Service on Gorelik was made on January 25, 2021.  (Doc. 35.)   On March 23, 2021, Gorelik filed a motion to dismiss the Amended Complaint.  (Doc. 38.)

On May 21, 2021, Plaintiff was released from detention in Etowah County under an order of supervision.  (Doc. 46, at 7.)

On September 24, 2021, after several months of being unable to reach Plaintiff, I dismissed this action without prejudice to restoring it if the application to restore was made within 30 days.  (Doc. 50.)  Just before this deadline expired, on October 22, 2021, Plaintiff sought additional time to restore this action, (Doc. 51), and on November 11, 2021, I granted Plaintiff until January 17, 2022 to restore the action, (Doc. 52).  Plaintiff moved to reopen the action on January 18, 2022, (Doc. 53), and I granted his request on January 20, 2022, (Doc. 54).

Plaintiff filed his brief opposing the motion to dismiss on February 25, 2022.  (Doc. 55.)  Gorelik filed his reply brief on his motion to dismiss on March 10, 2022.  (Doc. 57.)

### III.     Legal Standard

Federal district courts are courts of limited jurisdiction and must confirm that they have subject matter jurisdiction over matters before them.  *See Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question") (internal quotation marks omitted)).  Even where "neither party has raised a question as to this Court's jurisdiction .

5

. . 'it is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *Sanders v. New World Design Build, Inc.*, 19-CV-1071, 2020 WL 1957371, at *1 n.2 (S.D.N.Y. Apr. 23, 2020) (quoting *United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P 12(h)(3).

Although a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and alterations omitted); *see Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11-CV-1169, 2012 WL 1438347, at *2 (S.D.N.Y. Mar. 14, 2012) ("In deciding jurisdictional issues, the court may rely on affidavits and other evidence outside the pleadings.").

### IV.   Discussion

#### A.   *Subject Matter Jurisdiction*

Plaintiff's only remaining claim in this action is one under *Bivens* on the ground that Gorelik "maliciously and intentionally listed [Plaintiff] as an arriving alien" on the NTA. (*See* Am. Compl. ¶ 22.) Plaintiff argues that this adds up to "a malicious prosecution claim under the Fourth Amendment" and a violation of his "Fifth Amendment" due process right because it caused him to be "arbitrarily denied bond and then improperly classified as a national security

6

threat." (MTD Opp. 1.)[6] Similarly, Plaintiff alleges that the NTA amounted to an "illegal arrest" because Gorelik caused Plaintiff to be "detain[ed] . . . based on unreliable and manipulated information obtained from . . . error ridden databases." (Am. Compl. ¶ 55.)

"By any reasonable interpretation," Plaintiff's claim requires me "to review 'questions of law and fact arising from actions taken or proceedings brought to remove [him] from the United States.'" *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 190 (2d Cir. 2022) (quoting 8 U.S.C. § 1252(b)(9)) (alterations omitted). Plaintiff is seeking to hold Gorelik liable for the content of the NTA that commenced a removal proceeding, meaning that his claim "aris[es] from . . . actions taken . . . to remove" Plaintiff. 8 U.S.C. § 1252(b)(9).

Since Plaintiff's claim arises from actions taken to remove him, I lack subject matter jurisdiction over this action. "When jurisdiction is not 'otherwise provided' elsewhere in § 1252, a court lacks jurisdiction to review any 'question of law or fact arising from an action taken or proceeding brought to remove an alien from the United States' unless the court performs that review while conducting 'judicial review of a final order of removal under' § 1252." *Bhaktibhai-Patel*, 32 F.4th at 189 (quoting § 1252(b)(9)) (alterations omitted). Plaintiff's *Bivens* claim is not before me as part of a judicial review of a final order of removal, and there is nothing else in § 1252 that would give me jurisdiction to hear Plaintiff's claim. Indeed, the rest of the INA's jurisdictional provision confirms my lack of jurisdiction, as it states that

> notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

---

[6] "MTD Opp." refers to Plaintiff's Brief in Opposition to the Motion to Dismiss. (Doc. 55.)

*Bivens* is premised on the "general grant of jurisdiction to the federal courts by Congress" through "28 U.S.C. § 1331[]." *Bivens*, 403 U.S. at 405 (Harlan, J., concurring). Here, Plaintiff's claim is based upon paperwork Gorelik generated that allegedly contained erroneous information, and gave to Plaintiff to begin removal proceedings, including an NTA. (Am. Compl. ¶ 22.) Indeed, Plaintiff asserts that his alleged misclassification in the very paperwork that initiated his removal proceedings "caused [Plaintiff] harm because it subjected him to mandatory detention." (*Id.*) Therefore, whether Plaintiff's *Bivens* claim is "statutory or nonstatutory," under the facts alleged by Plaintiff, § 1252(g) leaves me without jurisdiction to hear this claim as it "aris[es] from" an "action . . . to commence [removal] proceedings." *See* 8 U.S.C. § 1252(g); *see also Jean-Baptiste v. Reno*, 144 F.3d 212, 214, 218 (2d Cir. 1998) (holding that 1252(g) "divest[ed] . . . the district court of jurisdiction to decide" claims asserting that a "lack of notice violates the[] constitutional rights under the Fifth Amendment's guarantee of due process.").[7]

### B. *Plaintiff's Bivens Claim*

Although I do not have jurisdiction and therefore must dismiss this case on that basis,

---

[7] Despite the prescription of the United States Supreme Court that § 1252(g) be given a "narrow reading," (*see Reno v. Am.-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 487 (1999)), this case falls squarely into the class of cases for which there is no jurisdiction. In *AADC*, the Supreme Court explained that § 1252(g) is not a "zipper clause" that "covers the universe of deportation claims"; rather, it applies only to three discrete actions that the Attorney General may take: the "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id*. at 482. Following the Supreme Court's direction in *AADC* and *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (discussing the holding in *AADC*), and interpreting § 1252(g) narrowly, courts in this district have found that § 1252(g) only applies to discretionary acts of the Attorney General. *See*, *e.g.*, *Roe v. United States*, No. 18-CV-2644, 2019 WL 1227940, at *4 (S.D.N.Y. Mar. 15, 2019); *see also Calderon v. Sessions*, 330 F. Supp. 3d 944, 954 (S.D.N.Y. 2018) ("The jurisdictional bar of Section 1252(g) applies to ICE's *discretionary* decisions."); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) (noting that § 1252(g) "prohibits judicial review of challenges to the discretionary decision whether to execute a removal order"); *cf. Saha v. Lynch*, 659 F. App'x 700, 701 (2d Cir. 2016) (under § 1252(g), courts "lack jurisdiction over any exercise of prosecutorial discretion").

even if I had jurisdiction, Plaintiff cannot state a *Bivens* claim under these circumstances.

### 1. Applicable Law

In *Bivens*, the Supreme Court held that "a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). The premise of *Bivens* was that, although "the Fourth Amendment does not provide for money damages 'in so many words,'" Article III courts themselves "could authorize a remedy under general principles of federal jurisdiction." *Ziglar v. Abassi*, 137 S. Ct. 1843, 1854 (2017) (quoting *Bivens*, 403 U.S. at 396). "The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, 442 U.S. 228 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, 446 U.S. 14 (1980), a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." *Hernandez*, 140 S. Ct. at 741. However, the Court in *Hernandez* acknowledged that "the Court changed course." *Id.* The "Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). However, both the words "expanding" and "disfavored" as used in the Court's language are misleading, because the Court has all but mandated that the causes of action allowed in *Bivens*, *Davis*, and *Carlson* must be limited to the facts and legal contexts of those cases. For example, the Court considers it to be an expansion of *Bivens* whenever a case's facts are "different in a meaningful way from previous *Bivens* cases decided by th[e] Court." *Id.* at 1859.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under

9

> which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860; *see also id.* at 1864 (stating that "this case has significant parallels to . . . *Carlson*" factually but that, because it was "predicated on the Fifth" Amendment, instead of on the Eighth Amendment as in *Carlson*, it was a "new context"). As another judge in this District has observed, "'disfavored' understates the change of course" the Court has taken, because "[f]or 'almost 40 years,' the Court has 'consistently rebuffed requests to add to the claims allowed under *Bivens*.'" *Powell v. United States*, No. 19-CV-11351, 2020 WL 5126392, at *4 (S.D.N.Y. Aug. 31, 2020) (quoting *Hernandez*, 140 S. Ct. at 743).

With this in mind, courts determine whether a *Bivens* remedy is available by "engag[ing] in a two-step inquiry." *See Hernandez*, 140 S. Ct. at 743. First, the court will consider "whether the request involves a claim that arises in a new context or involves a new category of defendants" from *Bivens* cases already decided by the Court, while taking a "broad" conception of what counts as a "new context." *Id.* (internal quotation marks omitted). "If the case does not present a new *Bivens* context, then such relief is not precluded, and the court may evaluate the claim for damages on the merits." *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 707 (S.D.N.Y. 2020).

If the "claim arises in a new context, we proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S. Ct. at 743 (internal quotation marks and alterations omitted). This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857–58. There is no way to exhaustively list all special factors, but special factors in the past

have included the "existence of alternative remedies." *Hernandez*, 140 S. Ct. at 750 n.12; *Ziglar*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not.").

### 2.     Application

The core of Plaintiff's challenge is the constitutionality of the process used in immigration proceedings against him.  (MTD Opp. 10 (arguing that Gorelik's "intent was to see [Plaintiff] be deported without Due Process," rendering it "within the orbit of a traditional 4th Amendment violation claim;" characterizing Plaintiff's "allegations" as being those of "malicious prosecution;" and further averring that Plaintiff's "equal protection claim under the Fifth Amendment is also facially similar to *Davis*").)  However, "[n]either *Bivens* nor *Davis* nor *Carlson* involved a malicious prosecution claim.  In light of this difference, courts in the Second Circuit and in other circuits have held that malicious prosecution claims present a new *Bivens* context."  *Powell*, 2020 WL 5126392, at *7.  I agree with this conclusion.  None of the Supreme Court's prior cases have allowed a *Bivens* claim for malicious prosecution or for any other sort of procedural challenge to any kind of proceeding, which means that Plaintiff's case "differ[s] in a meaningful way" from "*Bivens* cases decided by [the Supreme] Court."  *See Ziglar*, 137 S. Ct. at 1859.  Indeed, the Supreme Court has held that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 744 (explaining that Fourth and Fifth Amendment-based claims "involve[d] a new context" because the Court's prior cases implicated "unconstitutional arrest and search" and "alleged sex discrimination," whereas the plaintiffs pursued "cross-border shooting claims"); *cf. Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019) (contrasting the "privacy right" in *Bivens* as reflected in a claim of "a

11

warrantless invasion of [a] home" or an "unreasonable search and seizure" with a "claim aris[ing] from the force allegedly applied in making a lawful street arrest."). Plaintiff's claim is thus in contrast to a case decided by another judge in this District in which a *Bivens* claim was allowed against an ICE officer "for an allegedly unconstitutional arrest and search" of a disabled man at his assisted living facility. *Prado v. Perez*, 451 F. Supp. 3d 306, 315 (S.D.N.Y. 2020).

Moreover, Gorelik is a "new category of defendant" from the defendants allowed to be sued in *Bivens* and its Supreme Court progeny. *See Hernandez*, 140 S. Ct. at 743. Other courts in this Circuit have noted the difference between the defendants in *Bivens*—"investigatory and enforcement" officers—and defendants whose positions involve handling "judicial process and the execution of warrants." *See Edwards v. Gizzi*, No. 20-CV-7371, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (quoting *Style v. Mackey*, No. 17-CV-1691, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020)). Here, Gorelik is sued for his alleged role in "serv[ing] [Plaintiff] with an NTA wrongfully stating that [Plaintiff] is" not a United States citizen. (Am. Compl. ¶ 22.) Gorelik is thus not the sort of defendant previously allowed to be sued under *Bivens*.

This brings me to the special factors analysis. *Hernandez*, 140 S. Ct. at 743. The Supreme Court has held that this analysis disallows a *Bivens* remedy if "the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Ziglar*, 137 S. Ct. at 1858. For example, "if Congress has created any alternative, existing process for protecting the injured party's interest that itself may 'amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Rivera*, 370 F. Supp. 3d at 370–71 (quoting *Ziglar*, 137 S. Ct. at 1858) (alterations omitted).

Here, I have considerable hesitation in allowing Plaintiff to assert a *Bivens* claim based

on the conduct alleged, because Plaintiff is attempting to use *Bivens* as a way of challenging the process in his deportation proceeding. As discussed *supra*, the INA strongly suggests Congress's intent to restrain judicial "review [of] questions of law and fact arising from actions taken or proceedings brought to remove [a non-citizen] from the United States." *Bhaktibhai-Patel*, 32 F.4th at 190 (internal quotation marks and alterations omitted).

### V.     Conclusion

For the foregoing reasons, this action is DISMISSED for lack of subject matter jurisdiction. The Clerk of Court is respectfully directed to terminate this action and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated: June 13, 2024
       New York, New York

*[signature]*

Vernon S. Broderick
United States District Judge